UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WELLS FARGO BANK NA, | CASE NO. 2:20-cv-00317-LK-BAT |
| Plaintiff, | ORDER GRANTING MOTION TO DISBURSE INTERPLEADED FUNDS |
| v. | |
| ARMANDO CADENA and EXPEDITORS INTERNATIONAL OF WASHINGTON, INC., | |
| Defendants. | |

     In November 2019, Expeditors International of Washington, Inc.'s Chief Financial Officer contacted Wells Fargo Bank to report that Armando Cadena, an employee of "Expeditors," had embezzled funds from "Expeditors" and deposited them in his Wells Fargo account. Dkt. No. 1 at 3. In response, Wells Fargo initiated this interpleader action so that the Court could resolve two purportedly competing claims to the funds in Cadena's account. *Id.* at 1, 4–6. Less than a week later, Expeditors Washington initiated a separate action against Cadena claiming broader allegations of financial misconduct. *See* Dkt. No. 13 at 2 n.1; *Expeditors Int'l of Wash., Inc. v. Santillana*, No. 2:20-CV-00349-LK, Dkt. Nos. 77, 81, 86 (W.D. Wash.) (the "Direct Action"). The

1   Court then stayed this interpleader case while the parties litigated the Direct Action in anticipation

2   that the rightful ownership of the interpleaded funds would be revealed upon resolution of the

3   Direct Action. *See* Dkt. No. 25 at 2. However, when the Court dismissed the Direct Action with

4   prejudice and unstayed this action, the parties continued to dispute ownership of the funds.[1]

5       The matter is now before the Court on Cadena's Motion to Disburse Interpleaded Funds,

6   Dkt. No. 41, which Expeditors Washington opposes, Dkt. No. 43. Having thoroughly reviewed the

7   parties' submissions and the entirety of the record, including the record in the Direct Action, the

8   Court grants Cadena's motion.

9                           **I.       BACKGROUND**

10      As noted above, the genesis of this action is a communication from Expeditors

11  Washington's CFO to Wells Fargo, stating that $59,160.89 related to Cadena's alleged

12  embezzlement was transferred from Cadena's Mexican bank account into his Wells Fargo account.

13  Dkt. No. 1 at 3. The Expeditors Washington officer "demanded that Wells Fargo 'freeze all of

14  Armand[o] Cadena's assets at Wells Fargo.'" *Id.* Wells Fargo separately observed, apparently on

15  its own accord, that Cadena had "transferred several hundred thousand dollars through numerous

16  wires" from the same Mexican bank account into his Wells Fargo account. *Id.* Expeditors

17  Washington also provided Wells Fargo with a "confession" from Cadena and shared its belief that

18  Cadena was responsible for embezzling more than $2 million from "Expeditors." *Id.* Cadena

19  denied any wrongdoing, but based on the conflicting claims between the two parties, Wells Fargo

20  restrained the $1,115,321.96 in Cadena's account and, pursuant to Federal Rule of Civil Procedure

21  22 and 28 U.S.C. § 1335, filed a complaint for interpleader relief in this Court on February 27,

22  2020. *Id.* at 1–2, 4–6.

23

24  ---

[1] The Direct Action is currently on appeal in the Ninth Circuit.

ORDER GRANTING MOTION TO DISBURSE INTERPLEADED FUNDS - 2

1    On April 15, 2020, the Court adopted the parties' stipulation and proposed order (1) finding

2    that "this Court has jurisdiction over the parties"; (2) permitting Wells Fargo to deduct $5,891 in

3    reasonable costs and fees and to deposit the remaining $1,109,437.23 in restrained funds with the

4    Court's registry;[2] and (3) dismissing Wells Fargo with prejudice from this action. Dkt. No. 13 at

5    4. The same day that Wells Fargo deposited the interpleader funds with the Court's registry, *see*

6    Apr. 30, 2020 Docket Entry, Expeditors Washington moved to stay this case pending resolution

7    of the Direct Action, Dkt. No. 14. On August 31, 2020, the Court adopted United States Magistrate

8    Judge Brian A. Tsuchida's Report and Recommendation and stayed this case while also denying

9    Cadena's motion for a stay in the Direct Action. Dkt. No. 25 at 2. The order stated that "all pending

10   case deadlines are stricken, until such time as the rightful owner of the Interpleaded Funds is

11   determined in [the Direct Action]." *Id.*

12   On April 13, 2022, this case was reassigned to the undersigned United States District Judge.

13   Apr. 13, 2022 Docket Entry.[3] On February 10, 2023, following the dismissal of some of Expeditors

14   Washington's claims in the Direct Action, the Court ordered the parties to meet and confer and

15   file a joint status report "presenting their positions as to whether this action should remain stayed,

16   and if not, setting forth a proposed plan and schedule for resolving this action." Dkt. No. 30 at 1–

17   2 (citation omitted). The parties indicated that they disagreed as to whether the action should

18   remain stayed in light of Expeditors Washington's filing of a second amended complaint in the

19   Direct Action. Dkt. No. 33 at 1–3. Ultimately, this case remained stayed until after the Court

20   granted Cadena's motion to dismiss Expeditors Washington's second amended complaint with

21   prejudice, at which point the Court again ordered the parties to meet and confer and propose a plan

22

23   ---

[2] On May 13, 2020, an additional $6.51 was deposited into the Court's Registry. *See* May 13, 2020 Docket Entry.

24   [3] The Direct Action was reassigned to the undersigned on December 20, 2021. Direct Action, Dec. 20, 2021 Docket Entry.

ORDER GRANTING MOTION TO DISBURSE INTERPLEADED FUNDS - 3

1    for resolving this action. Dkt. No. 34 at 1–2. On January 2, 2024, the parties filed a status report

2    in which Expeditors Washington asked the Court to reimpose a stay and Cadena asserted that the

3    interpleader funds "should be disbursed to their owner and this action dismissed." Dkt. No. 35 at

4    2–3.

5          Because the parties' joint status report failed to comply with the Court's directives, Dkt.

6    No. 34, the Court ordered Expeditors Washington to show cause why reimposing a stay in this

7    case would be warranted and to explain its basis for maintaining a claim to the interpleaded funds.

8    Dkt. No. 36. In its response, Expeditors Washington argued that reimposing a stay was appropriate

9    because the rightful owner of the interpleaded funds had yet to be determined in the now-dismissed

10    Direct Action. Dkt. No. 37 at 6. And rather than explaining, even in general terms, its potential

11    claim to the interpleaded funds, Expeditors Washington averred that it was too soon to determine

12    rightful ownership and that, in any event, the funds should not be disbursed to Cadena. *Id.* at 7–9.

13          Cadena then filed a response, arguing that his individual ownership of the Wells Fargo

14    account creates a presumption that he has a priority right to the funds interpleaded from that

15    account, and that the only other potentially relevant claimant is Expeditors Washington's wholly

16    owned subsidiary, Expeditors International de Mexico S.A. de C.V. ("Expeditors Mexico")—not

17    Expeditors Washington. Dkt. No. 38 at 8. On this latter point, Cadena pointed out that in the Direct

18    Action, Expeditors Washington had alleged that the interpleaded funds were embezzled from

19    Expeditors Mexico. *Id.* at 2, 7–9; *see also* Direct Action, Dkt. No. 1 at 4 (alleging that Cadena's

20    Wells Fargo account held funds "stolen from Expeditors Mexico"). Indeed, in its motion to stay

21    this case, Expeditors Washington itself noted that "Cadena was previously employed in the

22    accounting department of Expeditors' wholly-owned subsidiary, . . . Expeditors Mexico," until he

23    was "terminated with cause on December 4, 2019[.]" Dkt. No. 14 at 3, 4 n.2. As part of the same

24    motion, Expeditors Washington contended that in light of Wells Fargo's dismissal, the only parties

1    with a claim to the Interpleaded Funds were Cadena and "Expeditors." *Id.* at 7. And in the Direct

2    Action, Expeditors Washington asserted that it, "through Expeditors Mexico," was the "lawful

3    owner of the monies that were misappropriated[.]" Direct Action, Dkt. No. 1 at 5. Similarly, in its

4    first amended complaint in the Direct Action, Expeditors Washington alleged that Cadena's Wells

5    Fargo account contained funds that he "embezzled from Expeditors Mexico," and that "Expeditors

6    [Washington], through Expeditors Mexico, is the lawful owner of the monies that were

7    misappropriated by Cadena, including but not limited to the funds in the Wells Fargo account[.]"

8    *Id.*, Dkt. No. 39 at 6, 8. In addition, Expeditors Washington's first amended complaint claimed

9    that Cadena had "a stock plan account with Fidelity Investments that contain[ed] shares of

10   Expeditors International of Washington, Inc. common stock and cash reserves with an estimated

11   value in excess of $1,000,000.00," which it believed Cadena obtained "during the same time that

12   [he] was actively engaging in the embezzlement scheme" with respect to Expeditors Mexico. *Id.*,

13   Dkt. No. 39 at 4, 6–7. Expeditors Washington's second amended complaint made no mention of

14   the Wells Fargo account, but re-alleged the same facts regarding the Fidelity account. *Id.*, Dkt. No.

15   62 at 3–4, 6.[4]

16          On February 12, 2024, the Court held a status hearing in this case to discuss the parties'

17   responses to the order to show cause and to better understand whether discovery in this case could

18   alter Expeditors Washington's claim to the interpleaded funds, particularly in light of the

19   distinction between Expeditors Washington and its subsidiary, Expeditors Mexico. Dkt. No. 40.

20   After hearing argument from both sides, the Court found that Expeditors Washington had failed to

21   adequately support its request to reimpose a stay in this case and also failed to demonstrate that

22

23
_____

24   [4] In its order dismissing the Direct Action, the Court held that Expeditors Washington "failed to sufficiently allege
     that it is entitled to a judgment declaring that Cadena is precluded from exercising stock options" because it never
     identified any contract provision or legal theory supporting this claim. Dkt. No. 77 at 7–10.

1    discovery could change the dynamic vis-à-vis Expeditors Mexico as its sole link to the interpleaded

2    funds. *Id.* Accordingly, the Court directed Cadena to file a motion for disbursement of the

3    interpleaded funds, which he did on February 20, 2024. *Id.*; *see* Dkt. No. 41. In response,

4    Expeditors Washington asks that the Court deny the motion or in the alternative, "(a) provide for

5    a new case schedule with a discrete discovery period, followed by dispositive motions on the issue

6    of each claimant's right to the property, and trial, if necessary; or (b) deny the motion and certify

7    the order for immediate appeal pursuant to 28 USC § 1292(b)." Dkt. No. 43 at 3, 8.

8                           **II.    DISCUSSION**

9    **A.    Legal Standard**

10        "The historical and still the primary purpose of interpleader is to enable a neutral

11   stakeholder, usually an insurance company or a bank, to shield itself from liability for paying over

12   the stake to the wrong party." *Indianapolis Colts v. Mayor & City Council of Baltimore*, 733 F.2d

13   484, 486 (7th Cir. 1984). "This is done by forcing all the claimants to litigate their claims in a

14   single action brought by the stakeholder." *Id.*; *see also* 28 U.S.C. § 2361. "[T]he fund itself is the

15   target of the claimants" and "marks the outer limits of the controversy." *State Farm Fire & Cas.

16   Co. v. Tashire*, 386 U.S. 523, 534 (1967). However, "the mere existence of such a fund cannot, by

17   use of interpleader, be employed to accomplish purposes that exceed the needs of orderly contest

18   with respect to the fund." *Id.*

19        Interpleader actions involve two stages. *Lincoln Nat'l Life Ins. Co. v. Ridgway*, 293 F.

20   Supp. 3d 1254, 1260 (W.D. Wash. 2018). First, "the district court decides whether the

21   requirements for a rule or statutory interpleader action have been met by determining if there is a

22   single fund at issue and whether there are adverse claimants to that fund." *Lee v. W. Coast Life

23   Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012) (cleaned up). And second, "[i]f the district court

24   finds that the interpleader action has been properly brought the district court will then make a

determination of the respective rights of the claimants." *Id.* (cleaned up).

"Absent special circumstances, the second phase [of an interpleader action] proceeds like any other action." *In re 1563 28th Ave., San Francisco, CA 94112*, 333 F.R.D. 630, 637 (N.D. Cal. 2019). "Each claimant has the burden of establishing his or her right to the fund or property by a preponderance of the evidence," and actions may be resolved on summary judgment if there is no genuine issue of material fact. *Field, Tr. of Deshon Revocable Tr. v. United States*, No. 2:15-CV-00241-TLN-DB, 2022 WL 705615, at *1 (E.D. Cal. Mar. 9, 2022) (cleaned up); *see also* 7 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1714 (3d ed. Apr. 2023 Update). However, "[c]ourts occasionally dismiss interpleader claimants for lack of standing." *Braid v. Stilley*, No. 21-CV-5283, 2022 WL 4291024, at *4 (N.D. Ill. Sept. 16, 2022), *appeal dismissed*, No. 22-2881, 2022 WL 19561992 (7th Cir. Dec. 7, 2022); *see, e.g.*, *Lincoln Benefit Life Co. v. Constance*, Case No. 13-C-4104, 2014 WL 2699757 at *1 (N.D. Ill. June 13, 2014) (dismissing interpleader claimant for lack of standing where her claim was "too speculative to confer standing"); *Aetna Life Ins. Co. v. Frank*, 592 F. Supp. 3d 317, 321–22 (S.D.N.Y. 2022); *Murphy v. United States Dep't of Treasury*, Case No. 2:10-cv-1945, 2012 WL 1155714 at *2 (D. Nev. April 6, 2012); *cf. In re: Coho Energy Inc.*, 395 F.3d 198, 203 (5th Cir. 2004) ("Even a claimant to a fund must show a realistic likelihood of injury in order to have standing."). In addition, "[a]lthough summary judgment is usually improper prior to the conclusion of discovery, it is appropriate where discovery would be futile." *Wells Fargo Bank, N.A. v. Akopyan*, No. 21-55280, 2022 WL 474158, at *1 (9th Cir. Feb. 16, 2022) (citing *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 774 (9th Cir. 2003)).

## B.    The Court Grants Cadena's Motion

Expeditors Washington argues that Cadena has not established his entitlement to the interpleaded funds. Dkt. No. 43 at 5–7. Cadena counters that because there is no genuine dispute

as to his claim of ownership, an order authorizing the Clerk of Court to distribute the funds to him is the last step needed to resolve this action. Dkt. No. 41 at 6–9; *see also* Dkt. No. 42 (Cadena's declaration and Wells Fargo bank statement from April 22, 2020). Cadena's motion "effectively amounts to a motion for summary judgment on the second stage of the interpleader action." *Wells Fargo Bank NA v. Wyo Tech Inv. Grp. LLC*, No. CV-17-04140-PHX-DWL, 2018 WL 6668487, at *7 (D. Ariz. Dec. 19, 2018); *see also* Dkt. No. 44 at 7 (Cadena noting that he "expressly invoked Rule 56 in his moving papers when describing the legal standard applicable to the Motion"). For the reasons discussed below, the Court finds that disbursing the interpleaded funds to Cadena is warranted.

This case was stayed under the presumption that the rightful owner of the interpleaded funds would be determined in the later-filed Direct Action. *See, e.g.*, Dkt. No. 37 at 5. That did not occur. Instead, during the course of that litigation, it became obvious that Expeditors Washington's claim to the interpleaded funds relied on a faulty premise; namely, its prospect of obtaining a subsequent judgment or finding in a collateral action, as opposed to any preexisting claim of entitlement to the money that was in Cadena's Wells Fargo account at the time Wells Fargo initiated this action. *See* Dkt. No. 42.

Expeditors Washington agrees that "a district court must normally determine the priority of claims in an interpleader action as they existed at the time the action was initiated." *Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1370 (9th Cir. 1997); *see* Dkt. No. 37 at 7–8. As one district court reasoned:

> A rule to the contrary would allow one claimant to obtain an advantage over others during the pendency of an interpleader action, which "would create the bizarre result that the very act of setting up the 'trust' in order to protect and preserve property for the benefit of its rightful owner would be the indirect cause of that rightful owner losing its rights to the property. Such an outcome is not only inequitable, but it is also inconsistent with the notion that the funds are held by the Court pending determination of the rightful owner at the time of the interpleader."

1   *XL Specialty Ins. Co. v. Lakian*, 243 F. Supp. 3d 434, 446 (S.D.N.Y. 2017) (quoting *Avant*

2   *Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 145 (2d Cir. 1988)); *see also JPMorgan Chase*

3   *Bank, N.A. v. Neu*, No. CV 17-3475, 2019 WL 4729269, at *3–4 (D.N.J. Sept. 26, 2019) (assessing

4   competing claims to funds interpleaded from a bank account based on the claims as they existed

5   at the time the interpleader action was filed). Yet Expeditors Washington has not cited, nor has the

6   Court identified, a case in which a claimant has successfully claimed a priority right to funds

7   interpleaded from an individually held bank account based on a contingent, collateral claim, let

8   alone one based on a harm to a corporate claimant's wholly-owned subsidiary.

9          On a general level, it would seem problematic that a company (or anyone) could contact

10  an individual's bank, allege that the individual embezzled money, prompt the bank to restrain and

11  interplead the funds, and at that point, pursue a separate action to prove their entitlement to such

12  funds. Indeed, the law provides other means to secure a defendant's assets before judgment where

13  necessary, such as a prejudgment writ of attachment. *See* Wash. Rev. Code §§ 6.25.010–6.25.280;

14  *New Summit Partner Corp. v. Cornwall, LLC*, No. C18-1599-JCC, 2018 WL 6696692, at *1 (W.D.

15  Wash. Dec. 20, 2018); *see also Wells Fargo Bank, N.A. v. Zadourian*, No. 2:20-CV-07512-JFW

16  (JPRx), 2021 WL 1160478, at *3 (C.D. Cal. Mar. 9, 2021), *aff'd sub nom. Akopyan*, 2022 WL

17  474158, at *2. It is still unclear to the Court why Expeditors Washington orchestrated an

18  interpleader action. This is not a case where, for instance, the account is in the name of an entity

19  and multiple parties are making a claim to the funds in the entity's account. *See, e.g.*, *Akopyan*,

20  2022 WL 474158, at *1; *Wells Fargo Bank, N.A. v. Mesh Suture, Inc.*, 31 F.4th 1300, 1303 (10th

21  Cir. 2022); *JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, No. 22-CV-3865 (JPO), 2024

22  WL 68527, at *1–2 (S.D.N.Y. Jan. 5, 2024); *Wachovia Bank, N.A. v. Tien*, 534 F. Supp. 2d 1267,

23  1270 (S.D. Fla. 2007); *cf.* Wash. Rev. Code § 30A.22.090(1) ("Funds on deposit in a single

24  account belong to the depositor."). Nor does Expeditors Washington allege that it has a claim to

the funds based on a lien or assignment from Cadena. *See, e.g.*, *United California Bank v. Fadel*, 482 F.2d 274, 275 (9th Cir. 1973). And Expeditors Washington sought a constructive trust over the Wells Fargo funds in the Direct Action. *See* Dkt. No. 55 at 21–22; Dkt. No. 59 at 18.

Moreover, because Expeditors Washington has been unable to identify any potentially redressable injury that it—and not Expeditors Mexico—suffered, specifically in relation to the interpleaded funds, the Court finds it has failed to plausibly argue that it could, as a matter of law, be entitled to any of the funds in the Court's registry. *See, e.g.*, *Frank*, 592 F. Supp. 3d at 321–22; *Murphy*, 2012 WL 1155714, at *2; *see also Tien*, 534 F. Supp. 2d at 1285 ("Where there are two claimants to specific property deposited in court, and one of the claimants moves to dismiss the other claimant's claims, the court may award the property to the first claimant . . . despite the first claimant's failure to answer formally claiming the property." (citing *Syms v. McRitchie*, 187 F.2d 915 (5th Cir. 1951))). It is well settled that "corporations, including parent companies and their subsidiaries, are treated as distinct entities." *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 636 (9th Cir. 2021); *see also United States v. Bennett*, 621 F.3d 1131, 1136 (9th Cir. 2010) ("[I]t almost goes without saying that a parent corporation does not own the assets of its wholly-owned subsidiary by virtue of that relationship alone."). Expeditors Washington has maintained that the alleged embezzlement that gave rise to this interpleader action occurred against its wholly owned subsidiary, Expeditors Mexico, and Expeditors Washington cannot stand in its place with respect to the interpleaded funds. *See* Direct Action, Dkt. No. 55 at 18–21; Dkt. No. 59 at 18.

To avoid this conclusion, Expeditors Washington argues that "the factual record reflects that Expeditors [Washington] asserted claims against Cadena in the Direct Action and those claims are independent of any claims that might be asserted by Expeditors Mexico." Dkt. No. 43 at 8. Expeditors Washington notes that in its dismissed second amended complaint in the Direct Action,

1   it asserted the following claims concerning "matters between Expeditors [Washington] and

2   Cadena":

3          (i) Breach of Contract: regarding (A) the Stock Option Agreements between
       Expeditors and Cadena, and (B) the Expeditors' Employee Stock Purchase Plan

4          pursuant to which Cadena purchased discounted Expeditors stock;

5          (ii) Breach of Contract: regarding Expeditors' Code of Business Conduct
       (the "Code"), a foundational document of corporate and individual integrity that is

6          applicable to and binding on all Expeditors employees worldwide; and[]

7          (iii) in the alternative, quasi-contract.

8   *Id.* Based on these allegations, Expeditors Washington summarily asserts it "has plead claims that

9   would be a viable basis to support a claim to the Interpleaded Funds." *Id.* But such "claims" have

10   been dismissed and do not actually clarify how Expeditors Washington would be able to show a

11   non-contingent, priority claim to the interpleaded funds that it alleged were wrongfully taken from

12   Expeditors Mexico. *See* Dkt. No. 41 at 8 ("Even if Expeditors Washington could establish that

13   some portion of the funds Cadena deposited into his Wells Fargo Cadena Account were at some

14   earlier moment the subject of conversion, the only possible claimant to that money is Expeditors

15   Mexico, not Expeditors Washington."); *see also* Dkt. No. 44 at 2, 4.

16         For these reasons, the Court previously found that Expeditors Washington failed to justify

17   the need for discovery in this action. Dkt. No. 40; *see also* Fed. R. Civ. P. 56(d); *Taylor v. Sentry*

18   *Life Ins. Co.*, 729 F.2d 652, 656 (9th Cir. 1984) (per curiam) (the party seeking discovery in

19   opposition to summary judgment "has the burden of showing the trial court what facts [it] hopes

20   to discover that would raise an issue of material fact"); *Hall v. State of Hawaii*, 791 F.2d 759, 761

21   (9th Cir. 1986) (explaining that it is "not enough" to claim that if a party's "discovery requests

22   were allowed [it] would be able to unearth facts that would reveal that there exists a genuine

23   dispute as to material facts"; that party "must make . . . clear what information [it] is seeking and

24   how it would preclude summary judgment"). Expeditors Washington's briefing to date has not

altered the Court's conclusion that discovery would be futile. *See* Dkt. No. 37 at 6–9; Dkt. No. 43 at 7–8.

Accordingly, based on the record before it, the Court grants Cadena's motion to disburse the interpleaded funds. *See, e.g.*, *Akopyan*, 2022 WL 474158, at *1; *Am. Gen. Life Ins. v. Fuqua*, No. 14-CV-14173, 2015 WL 3441177, at *1 (E.D. Mich. May 28, 2015) (denying reconsideration of order granting summary judgment and ordering disbursement of interpleader funds where, after oral argument, the court had determined that "discovery would be futile").

### III.     CONCLUSION

For the foregoing reasons, the Court GRANTS Cadena's motion. Dkt. No. 41. The Clerk of Court is authorized and directed to draw a check(s) on the funds deposited in the registry of this court in the principal amount of $1,109,443.74 plus all accrued interest, payable to Armando Cadena Santillana and to mail or deliver the check(s) to the payee's attorney of record who will receive and maintain the check: Armando Cadena Santillana c/o Mathew L. Harrington, Stokes Lawrence, P.S., 1420 Fifth Ave, Suite 3000, Seattle, WA 98101. *See* LCR 67(b); Dkt. No. 41-1 at 1. Pursuant to Local Civil Rule 67(b), a completed IRS W-9 form must be emailed to the Clerk's Office Finance Department at seafin@wawd.uscourts.gov, but shall not be filed in the record. The Clerk is directed to close this matter.

Dated this 26th day of June, 2024.

Lauren King
United States District Judge